### In the United States District Court
### for the Eastern District of Pennsylvania

| | |
|---|---|
| INOVA ENERGY LLC<br><br>**Plaintiff,**<br><br>*v.*<br><br>**CORNING ENERGY CORPORATION,**<br>**CORNING NATURAL GAS HOLDING**<br>**CORPORATION and**<br>**PIKE COUNTY LIGHT & POWER COMPANY**<br><br>**Defendants.** | Civil Action №.<br><br><br><br>**COMPLAINT**<br><br>*Civil Action* |

LAW OFFICES
MICHAEL J. BROOKS, ESQUIRE
*Attorney-at-Law*
252 West Swamp Road, Suite 13  ◊  Doylestown, Pennsylvania 18901
(215) 230-3761



### **COMPLAINT**

Plaintiff Inova Energy LLC, ("Inova" or "Plaintiff") by and through its counsel, on personal knowledge of its member as to its own actions and on information and belief as to the actions, capabilities and motivation of others, hereby alleges as follows:

### **NATURE OF THE CASE**

**1.** This is an antitrust action under the Sherman Act and state law claims arising out of Pike County Light & Power Company's ("Pike" or the "Defendant") illegal anticompetitive conduct to insulate, extend, and protect its monopoly over the electric distribution service territory of Pike County Light and Power Company.

### **THE PARTIES**

**2.** Inova is a duly registered Delaware limited liability company, formed February 28, 2019, with a registered agent address of 34192 Spring Brook Avenue, Lewes Delaware 19958, and is a Pennsylvania foreign limited liability company, duly registered to do business in Pennsylvania having filed a foreign registration statement on May 3, 2019, with a registered office address of 4735 North 13th Street, Philadelphia, Pennsylvania and a principal place of business located at 166 Paddlers Point, Suite 108, Matamoras, Pennsylvania 18336.

3.      Defendant Pike County Light & Power Company ("Pike" or the "Defendant") is a Pennsylvania domestic business corporation formed May 17, 1910, with a principal place of business located at 105 Schneider Lane, Milford, Pennsylvania 18337.  Pike is a wholly owned subsidiary of Corning Energy Corporation.[1]

4.      Defendant Corning Energy Corporation ("Corning") is a New York domestic business corporation formed July 19, 2013, with a principal executive office address of 330 West Willim Street, Corning, New York, 14830.

**JURISDICTION AND VENUE**

5.      This action arises under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 4 of the Clayton Act, 15 U.S.C. § 15(a). The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 15 U.S.C. §§ 4 and 15.

6.      This action is brought pursuant to Sections 1 – 4 of the Sherman Act (15 U.S.C. §§ 1 – 4) and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26).  Plaintiff seeks statutory damages and injunctive relief from ongoing violations of the antitrust laws of the United States.

7.      This Court has subject matter jurisdiction over the federal antitrust claims pursuant to 28 U.S.C. § 1331 and the Clayton Act; and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims stem from the same case or controversy and derive from a common nucleus of operative facts.

---

[1] Pike County Light & Power Company (PCLP or Pike), located in Northeastern Pike County, Pennsylvania, was officially incorporated as a subsidiary of Orange County Public Service Company of Port Jervis, NY on May 17th, 1910 by Thomas Watts of Middletown, NY, David H. Thomas of Catasaque, PA, William A. Parshall, Herbert Senger, and David R. Thomas, all of Port Jervis, NY. Each man became a director of the corporation and owned 2 shares valued at $50 each, except for David R. Thomas who owned 92 shares. Capital raised for the start-up was $5000.

Over time, the company began to grow rapidly and merged with several other small gas and electric companies. PCLP itself became a subsidiary of Orange & Rockland (parent company Con Edison) before falling under ownership of Corning Natural Gas Holding Corporation (CNGHC) in 2016. CNGHC, once a publicly traded company, was acquired by a private investment firm, Argo Infrastructure Partners on July 6th, 2022. The holding company name was changed in August of 2022 to Corning Energy Corporation (CEC). See, https://pclpeg.com/ (Last visited 15APRIL2024).



**8.** This Court has personal jurisdiction over Defendants Pike and Corning Energy Corporation because all Defendants regularly transact business within the geographic boundaries of this District by, *inter alia*, engaging in routine, systematic and continuous contacts with persons in this District. This Court has personal jurisdiction over Defendant, because Defendant: resides in this District; transacts business in this District; and committed the misconduct and anticompetitive acts alleged herein in this District.

### VENUE

**9.** Venue is proper in this district under 28 U.S.C. § 1391 (general venue provisions) and 15 U.S.C. §§ 15(a), 22 (nationwide venue for antitrust matters).

**10.** Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants resided, transacted business, were found, or had agents in this District; most or all of the events giving rise to these claims occurred in this District; and/or a substantial portion of the affected interstate trade and commerce discussed herein has been carried out in this District and 15 U.S.C. §§ 15(a), 22 (nationwide venue for antitrust matters).

**11.** Venue lies in this court under 28 U.S.C. §§ 1391 and 1400 (a).

### TRADE AND COMMERCE

**12.** The activities of Pike substantially affect interstate commerce in which Defendants are engaged. Moreover, upon information and belief, thousands of dollars of Pike's revenues derive from sources located outside of Pennsylvania, including payments from the federal government through such programs as Low Income Home Energy Assistance Program (LIHEAP) (https://pclpeg.com/liheap/ (Last Visited 30 October 2023) and/or through the United States Department of Agriculture (USDA) which offers homeowners in Pike County single-family



housing repair loans and grants (https://pclpeg.com/usda-loans-and-grants/ (Last Visited 30 October 2023).

**STATUTORY BACKGROUND**

**13.** The Sherman Act outlaws "every contract, combination, or conspiracy in restraint of trade," and any "monopolization, attempted monopolization, or conspiracy or combination to monopolize." 15 U.S.C. §§ 1, 2. The Clayton Act, 15 U.S.C. §§ 12–27, was enacted to strengthen and clarify the Sherman Act, allowing a private right of action under which successful private plaintiffs may be awarded treble damages and injunctive relief. *Id*. §§ 15, 26.

**14.** Jointly, these statutes prohibit: restraints on trade, 15 U.S.C. §§ 1, 18; monopolization, *id*. §§ 2, 18; and attempted monopolization, *id*., investing federal courts with jurisdiction to remedy, as well as prevent and restrain violations and attempted violations of the Sherman Act by injunction. 15 U.S.C. § 4. Section 2 of the Sherman Act, 15 U.S.C. § 2, provides, in pertinent part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony."

**15.** The federal antitrust laws are designed to prevent monopolistic conduct in its incipiency and sweep away all appreciable obstructions so that the statutory policy of free trade might be effectively achieved, that is: The Sherman Act also prohibits attempted monopolization, which can be proven by a showing of predatory or anticompetitive conduct, with a specific intent to monopolize, and a dangerous probability of achieving such monopoly power. Threatened success of any such attempt may be forestalled by injunctive relief under § 4 of the Sherman Act.



**FEDERAL PROGRAMS**

16.     LIHEAP is a federally funded program that issues heating benefits to supplement a household's annual energy cost. LIHEAP also offers an emergency benefit for households in a heat or heat related energy emergency.  https://pclpeg.com/liheap/.

17.     The cost to convert a home to natural gas can be prohibitive for some homeowners.  To help with this, the United States Department of Agriculture (USDA) offers homeowners in Pike County single-family housing repair loans and grants.  One way these low interest loans and grants can be used is for energy system upgrades to convert homes to natural gas.  https://pclpeg.com/usda-loans-and-grants/.

18.     In August of 2022, the Inflation Reduction Act (IRA) was signed into law.  As part of that legislation, multiple tax credits are available to homeowners up to $3200, or up to 30% of the sum of qualified expenses with limits beginning in 2023-2033. Credits can be applied for in years that qualified improvements are made and are not limited to one-time use. Commercial property owners and contractors are also eligible for various tax credits. https://www.energystar.gov/about/federal_tax_credits/; https://www.irs.gov/pub/taxpros/fs-2022-40.pdf/; and https://pclpeg.com/files/2023/12/2023_IRS_Tax_Credits_2.pdf

**FACTUAL ALLEGATIONS**

19.      The Electricity Generation Customer Choice and Competition Act of 1996, also known as "Act 138" or the "Competition Act", restructured Pennsylvania's electricity industry to allow customers to choose their electricity supplier. The act was signed into law by then-Governor Tom Ridge in 1996 and became effective January 1, 1997.

20.      Before the passage of the Competition Act in 1996, electric utilities offered a single, regulated price for generation, transmission, and distribution services.  Section 2802(13) of the



Competition Act, 66 Pa.C.S. § 2802(13). "These 'bundled' services were performed by one local utility that held a monopoly over its service area. However, to encourage a competitive wholesale electric market and to provide cost savings to consumers, in December 1996, the Competition Act was enacted to establish competition in the sale of electric power." *ARIPPA v. Pa. Pub. Util. Comm'n*, 792 A.2d 636, 642 (Pa. Cmwlth. 2002).

**21.** Upon the passage of the Competition Act, bundling was no longer permitted, and utility monopolies were broken up. Section 2804(3) of the Competition Act mandated that the Pennsylvania Public Utility Commission (Commission) "require the unbundling of electric utility services, tariffs and customer bills to separate the charges for generation, transmission and distribution." 66 Pa.C.S. § 2804(3). The generation of electricity ceased to be regulated as a public utility to ensure greater competition. 66 Pa.C.S. § 2802(14). Under Section 2806(d) and (e) of the Competition Act, electric distribution companies (EDCs) are required to file a restructuring plan with the Commission that demonstrated the separation and allocation of costs between the distribution, transmission, and generation functions. 66 Pa.C.S. § 2806(d)-(e).

**22.** To implement restructuring, each Pennsylvania electric distribution company (EDC) was required to file a Restructuring Plan (Plan) setting forth how it was going to come into compliance with the mandates of the Competition Act. 66 Pa. C.S. § 2806(d).

**23.** Pike County Light & Power Company is a public utility that owns electric distribution facilities. In this *Complaint*, Electric Distribution Company[2] or "EDC" is used to refer to the role of Pike as a deliverer of Competitive Energy Supply in a Direct Access environment as



---

[2] Electric Distribution Company or "EDC" - a public utility that owns electric distribution facilities. At times, this term is used to refer to the role of the Company as a deliverer of Competitive Energy Supply in a Direct Access environment as contemplated in the Electricity Generation Customer Choice and Competition Act, 66 Pa.C.S. §2801, et seq. See Exhibit 1 PIKE COUNTY LIGHT AND POWER COMPANY ELECTRIC GENERATION SUPPLIER COORDINATION TARIFF, p. 4, ¶20.

contemplated in the Electricity Generation Customer Choice and Competition Act, 66 Pa.C.S. §2801, *et seq*.

**24.** On April 15, 1999, an *Electric Generation Supplier Coordination Tariff* ("*Tariff*") was issued for Pike, to become effective May 1, 1999. This *Tariff* sets forth the basic requirements for interactions and coordination between Pike as the Electric Distribution Company (EDC) and Inova as the Electric Generation Suppliers[3] (EGS), necessary for ensuring the delivery of Competitive Energy Supply[4] from EGSs to their Customers. *See*, https://pclpeg.com/files/2018/08/PAelectricsuppliercoordinationtariff.pdf.

**25.** The *Tariff* requires Pike to make available to Inova, (as an EGS) the following specific information requested regarding a 'Customer'[5]:

(a) Company Account Number
(b) Customer Name
(c) Service Address
(d) Service City
(e) Service State, Zip
(f) Mailing Address
(g) Mailing City
(h) Mailing State, Zip
(i) Telephone Number
(j) Rate Class
(k) Rate Class Load Profile and Class Strata (if any)
(I) Installed Capacity Obligation
(m) Historical Energy Usage for past 24 months
(n) If applicable, Billing Demand history for past 24 months

---

[3] Electric Generation Supplier or "EGS" - a supplier of electric generation that has been certified or licensed by the Pennsylvania Public Utility Commission to sell electricity to retail customers within the Commonwealth of Pennsylvania in accordance with the Electricity Generation Customer Choice and Competition Act, 66 Pa.C.S. §2801, et seq. See Exhibit 1 PIKE COUNTY LIGHT AND POWER COMPANY ELECTRIC GENERATION SUPPLIER COORDINATION TARIFF, p. 4, ¶21.

[4] Competitive Energy Supply - energy and/or capacity provided by an Electric Generation Supplier. https://pclpeg.com/files/2018/08/PAelectricsuppliercoordinationtariff.pdf, p. 3, ¶7.

[5] **Customer** - any person, partnership, association, or corporation receiving Competitive Energy Supply from an Electric Generation Supplier in accordance with the Competition Act at a single metered location. See Exhibit 1 PIKE COUNTY LIGHT AND POWER COMPANY ELECTRIC GENERATION SUPPLIER COORDINATION TARIFF, p. 3.



**26.** Inova (as an EGS) is required to forecast, calculate and furnish Pike the hourly energy requirements for its customers. To assist Inova in the scheduling process, Pike is required by the *Tariff* to:

(a) provide historical customer electric consumption data as provided for in Rule 4.12 (c)
(b) indicate customers' load profile strata.
(c) provide scheduling software that includes the applicable Losses and load profile factors for the various load profile strata.

**27.** On April 8, 2021, the Pennsylvania Public Utility Commission ("PUC") accepted Inova's application to provide electric generation supplier (EGS[6]) services as a supplier in the electric distribution company service territory of Pike County Light and Power Company.

**28.** On December 2, 2021, the Pennsylvania Public Utility Commission ("PUC") approved Inova's application to provide electric generation supplier (EGS[7]) services as a supplier in the electric distribution company service territory of Pike County Light and Power Company.

**29.** The PUC granted Inova an electric generation supplier license as a supplier to serve residential, small commercial, large commercial, industrial, and governmental customers in the electric distribution company service territory of Pike County Light and Power Company. http://www.energychoicematters.com/stories/20211203b.html.

**30.** On December 2, 2021, Inova requested from Pike the necessary enrollment form and *Pike County Light & Power Company Consolidated Billing and Assignment Agreement* (POR form).

---

[6] Electric Generation Supplier or "EGS" - a supplier of electric generation that has been certified or licensed by the Pennsylvania Public Utility Commission to sell electricity to retail customers within the Commonwealth of Pennsylvania in accordance with the Electricity Generation Customer Choice and Competition Act, 66 Pa.C.S. §2801, et seq. See Exhibit 1 PIKE COUNTY LIGHT AND POWER COMPANY ELECTRIC GENERATION SUPPLIER COORDINATION TARIFF, p. 4, ¶21.

[7] Electric Generation Supplier or "EGS" - a supplier of electric generation that has been certified or licensed by the Pennsylvania Public Utility Commission to sell electricity to retail customers within the Commonwealth of Pennsylvania in accordance with the Electricity Generation Customer Choice and Competition Act, 66 Pa.C.S. §2801, et seq. See Exhibit 1 PIKE COUNTY LIGHT AND POWER COMPANY ELECTRIC GENERATION SUPPLIER COORDINATION TARIFF, p. 4, ¶21.



LAW OFFICES
MICHAEL J. BROOKS, ESQUIRE
*Attorney-at-Law*
252 West Swamp Road, Suite 13  ◇  Doylestown, Pennsylvania 18901
(215) 230-3761

**31.** Inova Energy LLC again requested from Pike the necessary enrollment form and POR form, noting it has been three months since last request.

**32.** On March 14, 2022, Inova sent an e-mail to Daniel Mumford, Director, Office of Competitive Market Oversight, Pennsylvania Public Utility Commission, requesting assistance in obtaining from Pike the necessary enrollment form and POR form.

**33.** On March 18, 2022, Daniel Mumford, by reply e-mail indicated he would reach out to Pike and request that Pike respond.

**34.** On March 23, 2022, Marie Husted, Energy Supply Manager for Corning Natural Gas on behalf of Pike sends the *Individual Coordination Agreement* (enrollment form) noting, "[y]ou are the first third party provider, so it has taken us some research."

**35.** On October 19, 2022, Inova again requested from Pike the necessary enrollment form and POR form, and in a reply e-mail Russell S. Miller Chief Information Officer, Senior Vice President Energy Supply, Corning Natural Gas Holding Corporation indicates POR's are not used.

**36.** On October 26, 2022, Marie Husted, Energy Supply Manager for Corning Natural Gas on behalf of Pike sends the *Pike County Light & Power Company Consolidated Billing and Assignment Agreement* (POR form).

**37.** Later on, October 26, 2022, Inova Energy LLC submits to Marie Husted the completed, signed *Pike County Light & Power Company Consolidated Billing and Assignment Agreement* (POR form).

**38.** On May 11, 2023, Abram Stephens, Energy Supply Specialist for Corning Natural Gas provided PLC's for the customers Inova requested.

**39.** On August 6, 2023, Inova requested from Abram Stephens, Energy Supply Specialist for Corning Natural Gas access to Orange & Rockland' EDI for Pike.



**40.** On August 14, 2023, Russell S. Miller, Chief Information Officer, Senior Vice President Energy Supply for Corning Natural Gas Holding Corporation, acknowledged by e-mail not providing the data.

**41.** On September 28, 2023, Daniel Mumford, Director Office of Competitive Morket Oversight at Pennsylvania Public Utility Commission, noted, "[i]t is apparent that Pike is not interested in handling this issue informally."

### RELEVANT MARKET

**42.** The relevant product and geographic markets for purposes of Pike's conduct, as described herein, is the electric distribution company service territory of Pike. *See*, https://pclpeg.com/service-areas/. Pike delivers electricity to approximately 5,200 customers in the Commonwealth of Pennsylvania, county of Pike, Milford Borough, Milford Township, Westfall Township, Matamoras Borough, Millrift, Pond Eddy, and a small northeast section of Dingman Township.

**43.** With respect to energy supply options in the Relevant Geographic Market, Pike notes "at this time there are no third-party suppliers available".

**44.** Consumers in the relevant geographic market do not have other options for energy supply.

**45.** Pike's conduct, as described herein, substantially affects interstate commerce.

**46.** A percentage of Pike's revenues comes from sources located outside of Pennsylvania, including the federal government (through its LIHEAP program). Pike also purchases the electricity it distributes, from the Orange and Rockland Utilities' Deerpark Substation in New York, with backup tie capability to distribution circuitry from Orange and Rockland's Port Jervis Substation, sellers located outside of Pennsylvania.

**47.** The "Relevant Product Market" applicable to these claims is the market for electricity.



48. Both Pike and Plaintiff provide the same products or services, sale of electric power, which are rendered within the above-described relevant product market in which they both compete.

49. Within the market, Plaintiff's customers have no alternatives in terms of purchasing electric power, and the only option for Plaintiff's customers is to go to Pike.

50. Indeed, a customer who seeks electric choice and contacts Pike regarding third party suppliers such as Inova, will result in the customer being informed, "THERE ARE NO THIRD PARTY SUPPLIERS AVAILABLE" and are therefore taken to Pike for electric power.



See, https://pclpeg.com/pennsylvania/

**COUNT ONE**
**ATTEMPTED MONOPOLIZATION IN VIOLATION OF 15 U.S.C.A § 2**

51. Plaintiff incorporates the prior paragraphs by reference.

52. Establishing attempted monopolization requires proof (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. It is not necessary to show that success rewarded the attempt to monopolize; rather, when that intent and the consequent dangerous probability exist, the Sherman Act, like many others and like the common law in some cases, directs itself against the dangerous probability as well as against the completed result.



**53.** Specific intent to monopolize does not mean an intent to compete vigorously; rather, it entails a specific intent to destroy competition or build or maintain monopoly power. Objective intent manifested by the use of prohibited means is sufficient to satisfy the intent component of attempt to monopolize.

**54.** The dangerous probability inquiry requires consideration of the relevant market and the defendant's ability to lessen or destroy competition in that market.

**55.** Pike possesses, and at all relevant times has possessed, monopoly power regarding the provision of electric power supply and monopsony power regarding information to be shared pursuant to the *Tarriff* in the Relevant Market. The actions described above, undertaken by Defendants directly and through its subsidiaries, are being undertaken in order to maintain and enhance Defendants' monopoly and monopsony power and, if not enjoined, threaten to achieve that result. These actions are exclusionary and constitute unlawful monopolization of the Relevant Market for electric power supply in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

**56.** As a direct and proximate result of Defendants' violations of Section 2 of the Sherman Act, Plaintiff has suffered injury to its business and property, and further such injury is threatened if Defendants' actions are not enjoined.

**57.** The actions of the Defendants have substantially harmed the competition for electric suppliers and, if not enjoined, threaten further harm to competition in the Relevant Market.

**58.** As set forth herein, Defendants have engaged in a purposive overall scheme that includes various forms of exclusionary, predatory, and anticompetitive conduct that, when added together, creates a dangerous probability that it will achieve its goals and maintain monopoly power in the relevant markets.



**59.** As set forth herein, Pike has acted with the specific intent to destroy its only competition, Plaintiff, and once destroyed, it will maintain its monopoly of electricity generation, transmission, and distribution services in the geographic market. As set forth herein, Pike intents to prevent a competitive marketplace and attempts to monopolize the relevant market by prohibited means, including violating the terms of its *Tarriff* and harmed Plaintiff's reputation to the point where it is no longer receiving referrals or communications when its customers.

**60.** Pike's concerted efforts to destroy its only competition in the Relevant Market, Plaintiff, shows both an intent to and dangerous probability of maintaining monopoly power.

**61.** Plaintiff has experienced loss of income and harm to its reputation due to the foreclosure of competition in the relevant market and suffered harm to its business and property.

**62.** These injuries were a direct and foreseeable result of Pike's anticompetitive course of conduct, as described herein. Further, these actions have deprived Plaintiff of the benefits of open competition and represent precisely the type of conduct the antitrust laws were designed to protect against.

## COUNT TWO
**Violation of the Sherman Act, 15 U.S.C. § 1, Unreasonable Restraint of Trade**

**63.** Plaintiff restates and incorporates each and every allegation above as if the same were fully set forth herein.

**64.** In addition to its monopolization efforts described above, Pike has also unreasonably restrained trade in the Relevant Market, in violation of Section 1 of the Sherman Act, as part of its overall anti-competitive scheme.

**65.** Pike's refusal to abide by basic requirements of the *Tarriff* for interactions and coordination between Pike as the Electric Distribution Company (EDC) and Inova as the Electric Generation

LAW OFFICES
MICHAEL J. BROOKS, ESQUIRE
Attorney-at-Law
252 West Swamp Road, Suite 13 ◊ Doylestown, Pennsylvania 18901
(215) 230-3761



Suppliers (EGS), necessary for ensuring the delivery of Competitive Energy Supply from Inova to its Customers is an unreasonable restraint of trade under Section 1 of the Sherman Act.

**66.** As a direct result of Pike's antitrust violations, Plaintiff has suffered injury and damages to its business and property, which Pike intended to cause. Further injury is threatened if Defendants' ongoing conduct in furtherance of this anti-competitive scheme is not enjoined, threatening to further harm competition in the Relevant Market.

### COUNT THREE
### Clayton Act Section 4

**67.** Plaintiff restates and incorporates each and every allegation above as if the same were fully set forth herein.

**68.** Section 4 of the Clayton Act seeks to deter antitrust violations and compensate their victims, stating: "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

**69.** As described herein, Pike's attempted monopoly and scheme to destroy its only competition violates the antitrust laws.

**70.** As a direct result of Pike's conduct as described herein, Plaintiff has experienced loss of income and harm to its reputation due to the foreclosure of competition in the relevant market and suffered harm to its business and property, among others, as cognizable injuries which the antitrust laws were intended to prevent. These injuries were a direct and foreseeable result of Defendants' anticompetitive course of conduct, as described herein.



71.     Further, these actions have deprived Plaintiff of the benefits of open competition and represent precisely the type of conduct the antitrust laws were designed to protect against. As such, Plaintiff is entitled to recover threefold the damages sustained, and the cost of suit, including reasonable attorneys' fees.

72.     In addition, Pike's actions described above have had the effect of lessening competition substantially in interstate trade and commerce in the Relevant Market, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

73.     As a direct and proximate result of Pike's violations of Section 7 of the Clayton Act, Plaintiff has suffered irreparable harm and damages to its business and property. These violations, and the anticompetitive effects and the irreparable harm caused thereby, will continue unless enjoined.

### COUNT FOUR
### Unfair Trade Practices and Consumer Protection Law, under PA law

74.     Plaintiff restates and incorporates each and every allegation above as if the same were fully set forth herein.

75.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce … ." 73 P.S. § 201-3. Courts liberally construe the UTPCPL in order to effect the legislative goal of consumer protection.

76.     The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" because of an unlawful method, act or practice. See 73 P.S. §201-9.2(a).  Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper.



**77.** As set forth herein, Pike has acted unfairly and deceptively to destroy competition by prohibited means.

**78.** As a result of Pike's actions, Plaintiff has been directly damaged in the form of loss of income and harm to its reputation and suffered harm to its business and property. As such, Plaintiff is entitled to recover threefold the damages sustained, and the cost of suit, including reasonable attorneys' fees.

## COUNT FIVE
### Tortious Interference with Business Relations, under PA law

**79.** Plaintiff restates and incorporates each and every allegation above as if the same were fully set forth herein.

**80.** As described herein, Pike interfered with Plaintiff's business relations.

**81.** These affirmative acts were undertaken for the specific purpose of interfering with Plaintiff's business relationships with its customers. These actions were also unjustified as they were undertaken to injure Plaintiff and further an unlawful, anticompetitive scheme as opposed to the legitimate acquisition of business.

**82.** As a result of the interferences described herein, Plaintiff was damaged in the form of lost income and the diminished value of its business and reputation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment against the Defendants as follows:
- That Defendants have unlawfully attempted to monopolize the relevant market for electricity supply in the electric distribution service territory of Pike County Light and Power Company;
- That Plaintiffs have been injured in its business by reason of Defendants' unlawful and anticompetitive behavior;
- That Defendants have breached its Tarriff concerning Plaintiff;
- That Defendants have violated the Pennsylvania UTPCPL;
- That Defendants have tortiously interfered with Plaintiff's business relationships;
- That Defendants are enjoined from terminating the privileges of Plaintiff's physicians;



• That Plaintiff is awarded threefold damages as a result of Defendants' conduct, as required by federal and state statutes;
• That Plaintiff is awarded its reasonable attorneys' fees and costs incurred in pursuing this action in accordance with the federal antitrust laws; and
• That the Court award such other relief as it deems just, necessary and proper.

### JURY DEMAND

PLAINTIFF hereby demands trial by jury on all issues triable to a jury.

DATED: September 7, 2024

LAW OFFICES
**MICHAEL J. BROOKS, ESQUIRE**
*Attorney-at-Law*
252 West Swamp Road, Suite 13
Doylestown, Pennsylvania 18901
(215) 230-3761

By: _____
Michael J. Brooks, Esquire
Attorney for Plaintiff
PA Supreme Court I.D. No. 74630

